IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
PENSACOLA DIVISION

LARRY B. MERRITT,
    Plaintiff,

vs.                                      Case No.:  3:13cv607/LAC/EMT

SERGEANT GODFREY,[1] et al.,
    Defendants.
_____/

**ORDER and REPORT AND RECOMMENDATION**

    Plaintiff Larry B. Merritt ("Merritt"), an inmate of the Florida Department of Corrections ("FDOC") proceeding pro se and in forma pauperis ("IFP"), commenced this civil rights action by filing a complaint under 42 U.S.C. § 1983 (doc. 1).  Merritt subsequently filed a Third Amended Complaint, which is the operative pleading (doc. 33).  This cause is now before the court on a motion to dismiss filed by Defendants Godfrey, Rogers, and Franco, in which those Defendants seek dismissal of Merritt's request for compensatory and punitive damages, his claims for injunctive and declaratory relief, and one of his Eighth Amendment claims (doc. 56).[2]  Merritt responded in opposition to the motion to dismiss (doc. 59).

    The case was referred to the undersigned for the issuance of all preliminary orders and any recommendations to the district court regarding dispositive matters.  *See* N.D. Fla. Loc. R. 72.2(C); *see also* 28 U.S.C. § 636(b)(1)(B), (C); and Fed. R. Civ. P. 72(b).  For the reasons set forth below, the court recommends that the motion to dismiss be granted in part.

---

[1] Apparently Plaintiff misspelled Defendant Godfrey's name in his pleading (*see* docs. 33, 56, 60); therefore, the court will direct the clerk of court to modify the docket to reflect the correct spelling.

[2] As of the date of this Report and Recommendation, Defendant Stewart has not been served with process.

I.      PLAINTIFF'S ALLEGATIONS

In Merritt's Third Amended Complaint, he alleges that on June 18, 2012, while he was housed at Santa Rosa Correctional Institution ("SRCI"), Defendants Correctional Officer Franco and Correctional Officer Stewart subjected him to excessive force during an escort from his cell to another area of the prison (doc. 33 at 9, 11). Specifically, Merritt alleges while he was in full restraints (handcuffed behind his back, chained at the waist, and shackled with leg irons, with a "black box" over the handcuffs, waist chain, and leg irons), Franco and Stewart forcefully lifted him off his feet, slammed him to the floor, and began to beat him by punching and elbowing him about the upper torso and face, causing injury to his lower back (*id.* at 11). Merritt alleges Defendant Correctional Officer Rogers was walking ahead of them at the time (*id.*). He alleges Rogers observed the beating, but failed to intervene (*id.*). Merritt alleges Defendant Sergeant Godfrey reported to the scene, and Defendant Franco told Godfrey that the use of force was in response to Merritt's biting his (Franco's) hand (*id.*). Merritt alleges Godfrey ordered Defendant Rogers to place a Special Management Spit Shield on Merritt, without the approval of the medical department, the warden, or the colonel, and despite the officers' knowledge that Merritt suffered from chronic asthma (*id.*).[3] Merritt alleges Godfrey also ordered retrieval of a handheld video camera, and stated on camera, "This is a spontaneous use of force on inmate Merritt who has been discharged from T.C.U., Transitional Care Unit to the Close Management Unit, who attempted to assault staff and force became necessary by escorting officers Franco and Stewart" (*id.*). Merritt alleges the officers then lifted him to his feet, and Defendants Rogers and Stewart escorted him to the Close Management Dormitory, where he was seen by Nurse Von for a post-use-of-force assessment (*id.* at 12). Merritt alleges he notified the nurse of his lower back injury, and was provided Ibuprofen and analgesic balm (*id.*).

Merritt sues Defendants in their individual capacities (*see* doc. 33 at 1). He claims that the use of force by Defendants Franco and Stewart violated his Eighth Amendment rights, and constituted assault and battery under Florida tort law (*id.* at 10, 16). Merritt claims that Defendant

---

[3] A spit shield is a specially designed fabric hood device that is constructed of medical filtration fabric and used to help contain contaminants and deter against biting or spitting by inmates (*see* doc. 59, Ex. G, State of Florida Department of Corrections Procedure Number 602.028, Special Management Spit Shield).

Case No.: 3:13cv607/LAC/EMT

Rogers' failure to intervene in the use of force violated the Eighth Amendment (*id.* at 16). Merritt claims that the use of the spit shield by Defendants Godfrey and Rogers constituted deliberate indifference to his health, in violation of the Eighth Amendment (*id.*). Merritt seeks monetary damages and declaratory and injunctive relief (*id.* at 10, 18–20).

II.  RULE 12(b)(6) STANDARD

In applying the Rule 12(b)(6) standard, the allegations of the complaint are taken as true and are construed in the light most favorable to Merritt. *See* <u>Davis v. Monroe Cnty. Bd. of Educ.</u>, 120 F.3d 1390, 1393 (11th Cir. 1997). To survive dismissal, "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." <u>Ashcroft v. Iqbal</u>, 556 U.S. 662, 678, 129 S. Ct. 1937, 1949 (2009) (quotation and citation omitted). A claim is plausible on its face where "the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citation omitted). Plausibility means "more than a sheer possibility that a defendant has acted unlawfully." *Id.* "Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief." *Id.* (quotation and citation omitted).

The determination of whether a complaint states a plausible claim for relief is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." <u>Iqbal</u>, 556 U.S. at 679 (citation omitted). The pleader is not entitled to relief "where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct." *Id.* (citing Fed. R. Civ. P. 8(a)(2)). The court is "not bound to accept as true a legal conclusion couched as a factual allegation." *Id.* at 678 (quotation and citation omitted). And "bare assertions" that "amount to nothing more than a formulaic recitation of the elements" of a claim "are conclusory and not entitled to be assumed true." *Id.* at 681 (quotation and citation omitted). Stated succinctly:

> Pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth. While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations. When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief.

*Id.* at 679. Finally, consistent with the foregoing precepts, in civil rights cases more than "mere conclusory notice pleading" is required, and a complaint is subject to dismissal "as insufficient where the allegations it contains are vague and conclusory." Gonzalez v. Reno, 325 F.3d 1228, 1235 (11th Cir. 2003) (quotation and citation omitted).

III.    ANALYSIS

As previously mentioned, Defendants Franco, Godfrey, and Rogers seek dismissal of one of Merritt's Eighth Amendment claims (i.e., his claim that Defendants Godfrey and Rogers violated the Eighth Amendment by placing a Special Management Spit Shield on him without prior approval, and despite their knowledge that he suffered from asthma) (*see* doc. 56). Defendants also seek dismissal of Merritt's requests for compensatory and punitive damages, and his claims for injunctive and declaratory relief (*id.*).

A.    Eighth Amendment Claim Regarding Use of Special Management Spit Shield

Specific to this claim, Merritt alleges Defendant Godfrey reported to the scene after the use of force by Defendants Franco and Stewart, and Defendant Franco told Godfrey that Merritt had bitten his (Franco's) hand (doc. 33 at 11). Merritt alleges Godfrey ordered Defendant Rogers to place a Special Management Spit Shield on Merritt, without the approval of the medical department, the warden, or the colonel, and despite the officers' knowledge that Merritt suffered from chronic asthma (*id.*).

Defendants Godfrey and Rogers contend they are entitled to qualified immunity as to this claim (doc. 56 at 7–10). They argue that Merritt's factual allegations do not state a plausible claim of deliberate indifference in violation of the Eighth Amendment, and even if his allegations stated a plausible claim, they were not on notice that their conduct was unconstitutional (*id.*).

Merritt responds that Godfrey and Rogers knew that their conduct violated FDOC policy and was thus illegal (doc. 59 at 5–7). In support of his argument, he submitted a copy of the FDOC's procedure governing use of the spit shield (*see* doc. 59, Ex. G).

"When properly applied, [qualified immunity] protects all but the plainly incompetent or those who knowingly violate the law." Ashcroft v. al–Kidd, — U.S. —, 131 S. Ct. 2074, 2085, 179 L. Ed. 2d 1149 (2011) (internal quotation marks omitted). This defense shields government officials performing discretionary acts "from liability for civil damages insofar as their conduct does not

violate clearly established statutory or constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818, 102 S. Ct. 2727, 73 L. Ed. 2d 396 (1982). In part, this defense recognizes the problems that government officials like police officers and correctional officers face in performing their jobs in dynamic and sometimes perilous situations. It is also designed to avoid excessive disruption of government services and to provide a direct way to end insubstantial claims on summary judgment. *Id.*

But the clearly established law requirement serves another purpose. It provides government officials with the ability to anticipate what conduct will give rise to liability for a constitutional violation. *See* Anderson v. Creighton, 483 U.S. 635, 646, 107 S. Ct. 3034, 97 L. Ed. 2d 523 (1987). To that end, when officials are acting within their discretionary capacity, they "can know that they will not be held personally liable as long as their actions are reasonable in light of current American law." *Id.* As a consequence, "[t]he contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Id.* at 640. This imposes an objective standard, and that objective standard is "measured by reference to clearly established law." Harlow, 457 U.S. at 818.

Because this objective standard is fundamental to the qualified immunity defense, the district court should determine if the law was clearly established at the time the incident occurred. As the Supreme Court explained:

> If the law at the time was not clearly established, an official could not reasonably be expected to anticipate subsequent legal developments, nor could he fairly be said to 'know' that the law forbade conduct not previously identified as unlawful . . . . If the law was clearly established, the immunity defense ordinarily should fail, since a reasonably competent public official should know the law governing his conduct.

Harlow, 457 U.S. at 818–19.

In this way, both government officials and citizens are protected. If the law is not clearly established, then the court should dismiss the case against the government official. If the law was clearly established, then the claim against the government official should go forward.

Furthermore, recognizing that the clearly established law question turns on the law at the time of the incident, the district court must consider the law "in light of the specific context of the case, not as a broad general proposition . . . ." Saucier v. Katz, 533 U.S. 194, 201, 121 S. Ct. 2151,

150 L. Ed. 2d 272 (2001).  In other words, the facts of the case before the court must be materially similar to the facts in the precedent that clearly establishes the deprivation.  *See* Merricks v. Adkisson, 785 F.3d 553, 559 (11th Cir. 2015) (citation omitted).  To be clearly established, the precedent must give officials clear warning of unconstitutional conduct.  *Id.*

In considering the law to do this analysis, the district court should compare the facts of the case before the court that allege a constitutional deprivation with those cases that the party opposing the motion contends show the clearly established nature of the law.  As the Eleventh Circuit has explained:

> For qualified immunity purposes, a pre-existing precedent is materially similar to the circumstances facing the official when the specific circumstances facing the official are enough like the facts in the precedent that no reasonable, similarly situated official could believe that the factual differences between the precedent and the circumstances facing the official might make a difference to the conclusion about whether the official's conduct was lawful or unlawful, in the light of the precedent.  Thus, every fact need not be identical.  Minor variations in some facts (the precedent lacks arguably significant fact or contains an additional arguably significant fact not in the circumstances now facing the official) might be very important and, therefore, be able to make the circumstances facing an official materially different than the pre-existing precedents, leaving the law applicable—in the circumstances facing the official—not clearly established when the defendant acted.

Merricks, 785 F.3d at 559 (internal quotation marks omitted).  Furthermore, the court cannot consider just any case law to decide if a right was clearly established.  Only binding opinions from the United States Supreme Court, the Eleventh Circuit Court of Appeals, and the highest court in the state where the action is filed, can serve as precedent for this analysis.  *See* McClish v. Nugent, 483 F.3d 1231, 1237 (11th Cir. 2007).

In conducting the qualified immunity analysis, a court need not employ a rigid two-step procedure, but rather may exercise its discretion to decide "which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand."  *See* Pearson v. Callahan, 555 U.S. 223, 236, 129 S. Ct. 808, 172 L. Ed. 2d 565 (2009).

Finally, "[o]nce the defendant public official satisfies his burden of moving forward with the evidence, the burden shifts to the plaintiff to show lack of good faith on the defendant's part.  This burden is met by proof demonstrating that the defendant public official's actions 'violated clearly

established constitutional law.'" Rich v. Dollar, 841 F.3d 1558, 1564 (11th Cir. 1988) (quoting Zeigler v. Jackson, 716 F.2d 847 (11th Cir. 1983)).

The constitutional right at issue in this case is the Eighth Amendment right to be free from cruel and unusual punishment. Merritt claims that Godfrey and Rogers' use of the spit shield without authorization from the medical department or the warden was done "maliciously and sadistically," and constituted deliberate indifference to his serious medical condition, in violation of the Eighth and Fourteenth Amendments (*see* doc. 33 at 16).

Stating an Eighth Amendment claim of denial of adequate medical care requires satisfying both an objective and subjective component. Taylor v. Adams, 221 F.3d 1254, 1257 (11th Cir. 2000). First, there must be conduct by prison officials which, objectively speaking, is "sufficiently serious" to constitute a deprivation "'denying the minimal civilized measure of life's necessities.'" *Id.* (quoting Wilson, 501 U.S. at 298 (internal quotation omitted)). Second, the prison officials must possess a subjective intent to use the medical deprivation as a means of punishment. *Id.* (citations omitted).

Both the objective and subjective components encompass two subsidiary requirements. Taylor, 221 F.3d at 1258. As to the objective prong, an objectively serious deprivation requires showing an objectively "serious medical need." Estelle v. Gamble, 429 U.S. 97, 104, 97 S. Ct. 285, 50 L. Ed. 2d 251 (1976). A serious medical need is "one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." Hill v. DeKalb Reg'l Youth Det. Ctr., 40 F.3d 1176, 1186 (11th Cir. 1994); *see* Farmer, 511 U.S. at 834 (serious medical need is one that, if left unattended, "pos[es] a substantial risk of serious harm."). In addition, an objectively serious deprivation requires showing the response made by Defendants to that need was so deficient as to constitute "an unnecessary and wanton infliction of pain." Estelle, 429 U.S. at 105–06 (internal quotation marks omitted); *see* Taylor, 221 F.3d at 1257; *see also* Adams v. Poag, 61 F.3d 1537, 1543–44 (11th Cir. 1995).

To show the required subjective intent to punish, a plaintiff must demonstrate that Defendants acted with an attitude of "deliberate indifference." Estelle, 429 U.S. at 105. "Deliberate indifference has three components: (1) subjective knowledge of a risk of serious harm; (2) disregard

of that risk; (3) by conduct that is more than mere negligence." Farrow v. West, 320 F.3d 1235, 1245–46 (11th Cir. 2003) (citing McElligott v. Foley, 182 F.3d 1248, 1255 (11th Cir. 1999) and Taylor, 221 F.3d at 1258 (stating that defendant must have subjective awareness of an "objectively serious need" and that his response must constitute "an objectively insufficient response to that need")).

Here, Merritt admits that Godfrey ordered use of the spit shield in response to Officer Franco's report that Merritt bit Franco's hand. Even if Merritt disputes the truth of Franco's report, Merritt does not allege that either Godfrey or Rogers was aware of circumstances suggesting that Franco's report was false.[4] FDOC policy generally requires approval of the Chief Health Officer and the warden prior to use of the spit shield (*see* doc. 59, Ex. G, Procedure 602.028, Specific Procedures (1)(c). However, the policy permits the spontaneous use of the special management spit shield, without prior approval by the warden and CHO, to protect staff from immediate exposure to bodily fluids or human wastes whenever an inmate orally expels bodily fluids on or in the direction of another person, or threatens to do so (*see id.*, Specific Procedures (3)). These were the circumstances with which Godfrey was presented when he ordered use of the spit shield during the remainder of Merritt's escort. Furthermore, Merritt was not left alone and was in the continuous presence of at least two officers (Officers Rogers and Stewart) during the remainder of the escort, thus ensuring that any signs of respiratory distress would be observed, in compliance with the spit shield policy (*see id.*, Specific Procedures (3)(c)). Additionally, Merritt was next escorted to a room of the Close Management dormitory, where a nurse assessed his medical condition, as required by the FDOC's spit shield policy and its use of force policy (*see id.*, Specific Procedures (3)(e); *see also* Fla. Admin. Code rr. 33-602.210(5)(c), 33-602.210(25)). Merritt does not allege he suffered from or exhibited signs of any respiratory distress or difficulty breathing at any time the spit shield was in place.

Taking Merritt's factual allegations as true, they fail to plausibly suggest that use of the spit shield in these circumstances constituted an objectively serious deprivation. His allegations

---

[4] Merritt alleges Officer Rogers was walking in front of Franco, Stewart, and Merritt during the escort. Merritt alleges Rogers observed the use of force by Franco and Stewart; however, he does not allege that Rogers observed, or was in a position to observe, the three men prior to Franco and Stewart's use of force. Merritt admits that Godfrey was not present at the scene until after the use of force.

Case No.:  3:13cv607/LAC/EMT

Page 9 of 17

additionally fail to plausibly suggest that, despite Defendants' alleged knowledge that Merritt suffered from asthma, Defendants drew the inference that placing a spit shield on him for the remainder of his escort posed an excessive risk to his health. Therefore, his allegations fail to state a violation of the Eighth Amendment.[5]

Furthermore, Merritt failed to demonstrate that the state of the law at the time of the use of the spit shield (June 18, 2012) gave Sergeant Godfrey and Officer Rogers fair warning that their use of the spit shield in the circumstances was unconstitutional. The only cases cited by Merritt that have precedential value for the qualified immunity analysis are Wilson v. Layne, 526 U.S. 603, 119 S. Ct. 1692, 143 L. Ed. 2d 826 (1999) and Elder v. Holloway, 510 U.S. 510, 114 S. Ct. 1019, 127 L. Ed. 2d 344 (1994) (*see* doc. 59 at 5–7). However, neither of these cases involves the legal issue presented in this case, and neither case involves facts materially similar to the facts in this case. The Wilson decision clearly established that "media ride-alongs," where police officers invite representatives of the media to accompany them while executing an arrest warrant in a private home, violates the Fourth Amendment. *See* 526 U.S. at 605. The Elder decision also involved the plaintiff's Fourth Amendment right against unreasonable seizure, but the Court did not address the merits of the constitutional issue. *See* 510 U.S. at 512–16. Instead, the Court considered whether an appellate court—in reviewing a judgment according public officials qualified immunity from a damages suit charging violation of a federal right—must disregard relevant legal authority not presented to, or considered by, the court of first instance. *Id.* at 511–12. The Court held that appellate review of a district court's qualified immunity disposition was to be conducted in light of all relevant precedents, not simply those cited to, or discovered by, the district court. *Id.* at 512.

In sum, Merritt failed to carry his burden of demonstrating that use of the spit shield by Defendants Godfrey and Rogers violated clearly established constitutional law. Therefore,

---

[5] To the extent Merritt's allegations regarding use of the spit shield should be treated as an excessive force claim under the Eighth Amendment, rather than a deliberate indifference claim, the allegations also fail to state a claim for relief. When the conduct in question "involves any measure taken to prevent a security threat or restore official control, the Eighth Amendment inquiry is whether force was applied in a good faith effort to maintain or restore discipline or inflicted maliciously and sadistically for the very purpose of causing harm." Sims v. Mashburn, 25 F.3d 980, 984 (11th Cir. 1994). The "malicious and sadistic" intent requirement is more stringent than the deliberate indifference standard. *See* Campbell v. Sikes, 169 F.3d 1353, 1374 (11th Cir. 1999) (citations omitted). Because Merritt's allegations do not satisfy the less demanding deliberate indifference standard, they also cannot satisfy the more demanding "malicious and sadistic" standard.

Defendants Godfrey and Rogers are entitled to qualified immunity as to Plaintiff's Eighth Amendment claim concerning use of the spit shield. Additionally, because this is the only claim asserted against Sergeant Godfrey, he should be dismissed as a Defendant from this action.

  B.  <u>Claims for Compensatory and Punitive Damages</u>

Defendants contend Merritt's request for compensatory and punitive damages is barred by 42 U.S.C. § 1997e(e), because he does not allege he suffered more than de minimis physical injury as a result of the alleged Eighth Amendment violations (*see* doc. 56 at 2–5).

In an action under § 1983, a plaintiff may recover damages for monetary loss, physical pain and suffering, mental and emotional distress, impairment of reputation, and personal humiliation. *See* <u>Slicker v. Jackson</u>, 215 F.3d 1225, 1231 (11th Cir. 2000). But, "[n]o Federal civil action may be brought by a prisoner confined in a jail, prison, or other correctional facility, for mental or emotional injury suffered while in custody without a prior showing of physical injury . . . ." 42 U.S.C. § 1997e(e). To satisfy § 1997e(e), a prisoner must allege physical injury that is more than de minimis, but the injury need not be significant. *See* <u>Harris v. Garner</u>, 190 F.3d 1279, 1282, 1286–87 (11th Cir. 1999) (concluding that ordering a prisoner to "dry shave," without more, did not satisfy § 1997e(e)'s physical harm requirement), *reh'g en banc granted, vacated*, 197 F.3d 1059 (11th Cir. 1999), *reinstated in relevant part*, 216 F.3d 970 (11th Cir. 2000) (en banc). Section 1997e(e) is an affirmative defense, and the district court may sua sponte dismiss a claim where the allegations show that it would bar recovery. *See* <u>Douglas v. Yates</u>, 535 F.3d 1316, 1320–21 (11th Cir. 2008).

Although the Eleventh Circuit has not adopted a definition of "de minimis" as it pertains to Section 1997e(e), it recently cited positively, albeit in an unpublished decision, the following description by a federal district court in the Fifth Circuit:

> [A]n appropriate de minimis standard would be whether as a common-sense category approach to the injury; would the injury require or not require a free world person to visit an emergency room, or have a doctor attend to, give an opinion, diagnosis and/or medical treatment for the injury? In effect, would only home treatment suffice? . . . A physical injury is an observable or diagnosable medical condition requiring treatment by a medical care professional. It is not a sore muscle, an aching back, a scratch, an abrasion, a bruise, etc., which lasts even up to two or three weeks. People in the regular and ordinary events and activities in their daily lives do not seek medical care for the injuries they receive unless it obviously appears to be of

>   a serious nature, or persists after home remedy care. . . . Injuries treatable at home and with over-the-counter drugs, heating pads, rest, etc., do not fall within the parameters of 1997e(e).

Luong v. Hatt, 979 F. Supp. 481, 486 (N.D. Tex. 1997) (cited in Thompson v. Sec'y, Fla. Dep't of Corr., 551 F. App'x 555, 557 n.3 (11th Cir. 2014) (unpublished)).[6] A plaintiff's allegations that he suffered continuing severe physical pain and other symptoms that persisted for an extended period of time and required medical treatment are sufficient to constitute more than a de minimis physical injury. *See, e.g.* Thompson, 551 F. App'x at 555–57 (plaintiff's allegations that for over one year, he suffered severe physical pain and headaches, weakness, cold sweats, dizziness, weight loss, numbness in his left arm, and high blood sugar that caused fainting, rose above the de minimis threshold).[7]

In Merritt's Third Amended Complaint, he alleges that as a result of the use of force by Defendants Stewart and Franco on June 18, 2012, he suffered "injury to his lower back," for which he was treated with Ibuprofen and analgesic balm (doc. 33 at 12, 18). He alleges he has "suffered continuously with lower back pain" while sitting or standing, that his back injury is "serious," and that the "lower back pain injury" has worsened since the injury occurred (*id.* at 13–14, 19). He alleges he sought diagnosis and treatment of his lower back injury from institutional medical staff, and "has begged and cried for help," but his requests have been denied and ignored (*id.* at 14).

Defendants contend Merritt's "subjective" allegations of "after-the-fact back pain" are insufficient to satisfy the physical injury requirement of § 1997e(e) (doc. 56 at 3–5).

At this stage of the case, where the court must take Merritt's allegations as true, the court cannot conclude that the physical injury he alleges is de minimis as a matter of law. *See* Harris, 190

---

[6] District courts in the Eleventh Circuit have cited Luong as persuasive authority. *See, e.g.*, Green v. Grace, No. 3:08cv406/RV/AK, 2010 WL 63078, at *3–4 (N.D. Fla. Jan. 5, 2010) (unpublished); Daughtry v. Moore, No. 08-00214-KD-C, 2009 WL 1151858, at *5 (S.D. Ala. Apr. 27, 2009) (unpublished); Watkins v. Trinity Serv. Group, No. 8:05-cv-1142-T-24MSS, 2006 WL 3408176, at *4 (M.D. Fla. Nov. 27 2006) (unpublished). Additionally, the Third and Sixth Circuits have cited the Luong standard positively, although in unpublished opinions. *See* Perez v. United States, 330 F. App'x 388, 389 (3d Cir. 2009) (unpublished); Jarriett v. Wilson, 162 F. App'x 394, 400 (6th Cir. 2005) (unpublished). The Ninth Circuit rejected the Luong standard as "overly restrictive." Pierce v. County of Orange, 526 F. 3d 1190, 1224 (9th Cir. 2008).

[7] The undersigned cites unpublished Eleventh Circuit opinions only as persuasive authority and recognizes that the opinions are not considered binding precedent. *See* 11th Cir. R. 36-2.

Case No.: 3:13cv607/LAC/EMT

F.3d at 1286–87. Merritt's allegation of back pain while sitting or standing, which he alleges persisted and worsened during the year and a half between the use of force and his filing this lawsuit, appear to allege more than the vague injury or periodic episodes of pain found by the Eleventh Circuit to be de minimis as a matter of law for purposes of § 1997e(e). *See* Quinlan v. Pers. Transp. Servs. Co., 329 F. App'x 246, 248–49 (11th Cir. 2009) (holding that § 1997e(e) barred pre-trial detainee's claims for compensatory and punitive damages; complaints of temporary chest pain, headache and difficulty breathing while in transport van, as well as subsequent "continuous back pain in [his] lower back that periodically cause[d][him] to walk hunched over," did not constitute more than de minimis physical injury required under § 1997e(e), since none of the conditions required immediate medical attention or evidenced physical injury besides discomfort); Mann v. McNeil, 360 F. App'x 31, 32 (11th Cir. 2010) (holding that § 1997e(e) barred inmate's claims for monetary damages; inmate's complaints of vague injuries to his back and scrapes and marks on his knees and legs did not amount to more than de minimis physical injury).

    C.    Declaratory and Injunctive Relief

In the Third Amended Complaint, Merritt seeks an injunction requiring the FDOC to: (1) immediately schedule an x-ray or MRI of his lower back, and an examination by a "qualified physician" to diagnose and treat his "lower back ailment and pain"; (2) release him from "punitive segregation" to the open population; (3) transfer him to an institution outside of Region 1; and (4) expunge a disciplinary conviction from his inmate records (doc. 33 at 18–19). He also seeks an injunction enjoining the FDOC from ever housing him at SRCI (*id.* at 19). Defendants contend Merritt's request for injunctive relief should be dismissed, because the FDOC is not a party to this action (*see* doc. 56 at 5–6). Merritt contends his allegations present a "safety issue," because even though he was transferred from SRCI to Union Correctional Institution nearly one year ago (*see* doc. 29), he could possibly suffer retaliation if the FDOC returned him to SRCI (doc. 56 at 5–6).

"To obtain a permanent injunction, a party must show: (1) that he has prevailed in establishing the violation of the right asserted in his complaint; (2) there is no adequate remedy at law for the violation of this right; (3) irreparable harm will result if the court does not order injunctive relief; and (4) if issued, the injunction would not be adverse to the public interest." Thomas v. Bryant, 614 F.3d 1288, 1317 (11th Cir. 2010); Keener v. Convergys Corp., 342 F.3d

1264, 1269 (11th Cir. 2003) ("Permanent injunctive relief requires three elements: (1) success on the merits; (2) continuing irreparable injury; and (3) no adequate remedy at law."); *see also* Sampson v. Murray, 415 U.S. 61, 88, 94 S. Ct. 937, 39 L. Ed. 2d 166 (1974) ("The basis of injunctive relief in the federal courts has always been irreparable harm and inadequacy of legal remedies."). To establish the irreparable injury requirement, the party must show that the threat of injury to him is "neither remote nor speculative, but actual and imminent." Northeastern Fla. Chapter of Ass'n of Gen. Contractors of Am. v. City of Jacksonville, Fla., 896 F.2d 1283, 1285 (11th Cir. 1990) (quoting Tucker Anthony Realty Corp. v. Schlesinger, 888 F.2d 969, 973 (2d Cir. 1989)); *see also* Church v. City of Huntsville, 30 F.3d 1332, 1337 (11th Cir. 1994) (stating that to obtain injunctive relief, a plaintiff must show "a real and immediate—as opposed to a merely conjectural or hypothetical—threat of future injury.") (emphasis omitted). This necessitates that the persons from whom the injunctive relief is sought be parties to the underlying action. *See* Infant Formula Antitrust Litig., MDL 878 v. Abbott Labs., 72 F.3d 842, 842–43 (11th Cir. 1995) (holding that district court lacked subject matter jurisdiction to issue preliminary and permanent injunction against a non-party to the pending action). In addition, "[t]he remedy must of course be limited to the inadequacy that produced the injury in fact that the plaintiff has established." Lewis v. Casey, 518 U.S. 343, 357, 116 S. Ct. 2174, 135 L. Ed. 2d 606 (1996); *see also* Missouri v. Jenkins, 515 U.S. 70, 88, 89, 115 S. Ct. 2038, 132 L. Ed. 2d 63 (1995) ("[T]he nature of the . . . remedy is to be determined by the nature and scope of the constitutional violation") (citation and internal quotation marks omitted); Califano v. Yamasaki, 442 U.S. 682, 702, 99 S. Ct. 2545, 61 L. Ed. 2d 176 (1979) ("[T]he scope of injunctive relief is dictated by the extent of the violation established."); Soc'y for Good Will to Retarded Children, Inc. v. Cuomo, 737 F.2d 1239, 1251 (2d Cir. 1984) ("Injunctive relief should be narrowly tailored to fit the specific legal violations adjudged."). In the context of prison conditions, courts must also consider the requirements of the prison Litigation Reform Act, 18 U.S.C. § 3626, which provides, in relevant part:

> Prospective relief in any civil action with respect to prison conditions shall extend no further than necessary to correct the violation of the Federal right of a particular plaintiff or plaintiffs. The court shall not grant or approve any prospective relief unless the court finds that such relief is narrowly drawn, extends no further than necessary to correct the violation of the Federal right, and is the least intrusive means necessary to correct the violation of the Federal right.

18 U.S.C. § 3626(a)(1)(A).

In the instant case, Merritt names individual correctional officers as Defendants, and he alleges only individual wrongdoing on the part of each Defendant, yet his demand for injunctive relief is directed not to any individual Defendant, but to the FDOC. Merritt has not pled an official capacity claim against any Defendant (i.e., Merritt does not allege that the alleged constitutional violations were the result of an FDOC policy, and he expressly states he is suing Defendants in their individual capacities), and the FDOC is not a party to this suit. Accordingly, the court cannot issue an injunction against the FDOC. Further, Merritt fails to show that he has no adequate remedy at law to address the alleged ongoing residual effects of the alleged use of excessive force. Merritt may seek medical care at his present institution. In addition, the allegations do not support a finding of any unconstitutional action that is ongoing. As Merritt's allegations do not plausibly support the prospective permanent injunctive relief he seeks, his demand for injunctive relief should be dismissed.

Merritt also seeks declaratory relief in the form of a declaration that the acts and omissions of Defendants violated his rights under the Constitution (*see* doc. 33 at 18). Defendants contend that the court may not grant this relief, because it is essentially a determination of the ultimate issues of fact in this case, which is the sole province of the jury (*see* doc. 56 at 6). Defendants additionally contend that declaratory relief in inappropriate, because a declaratory judgment is meant to define the legal rights and obligations of the parties in anticipation of some future conduct, but Merritt seeks simply a declaration of liability for a prior, past act (*id.* at 6–7).

The federal district court is empowered to issue a declaratory judgment by the Federal Declaratory Judgment Act, 28 U.S.C. § 2201 (1982). Section 2201 provides, in pertinent part:

> § 2201. **Creation of remedy**
>
> In a case of actual controversy within its jurisdiction, . . . any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought. Any such declaration shall have the force and effect of a final judgment or decree and shall be reviewable as such.

28 U.S.C. § 2201. That statute, echoing the "case or controversy" requirement of Article III of the Constitution, provides that a declaratory judgment may only be issued in the case of an "actual

controversy." That is, under the facts alleged, there must be a substantial continuing controversy between parties having adverse legal interests. Emory v. Peeler, 756 F.2d 1547, 1552 (11th Cir. 1985) (citing Lake Carriers' Ass'n v. MacMullan, 406 U.S. 498, 506, 92 S. Ct. 1749, 32 L. Ed. 2d 257 (1972); Golden v. Zwickler, 394 U.S. 103, 108, 89 S. Ct. 956, 22 L. Ed. 2d 113 (1969); Sullivan v. Div. of Elections, 718 F.2d 363, 365 (11th Cir. 1983)). The plaintiff must allege facts from which the continuation of the dispute may be reasonably inferred. *Id.* (citation omitted). Additionally, the continuing controversy may not be conjectural, hypothetical, or contingent; it must be real and immediate and create a definite, rather than speculative, threat of future injury. *Id.* (citing City of Los Angeles v. Lyons, 461 U.S. 95, 103 S. Ct. 1660, 75 L. Ed. 2d 675 (1983); Golden, 394 U.S. at 108; Wolfer v. Thaler, 525 F.2d 977, 979 (5th Cir. 1976)). The remote possibility that a future injury may happen is not sufficient to satisfy the "actual controversy" requirement for declaratory judgments. *Id.* (citing Lyons, 461 U.S. at 103).

Here, Merritt alleges he has been injured by Defendants' past conduct, but he makes no factual allegation that such conduct by Defendant Franco, Stewart, or Rogers has continued or will be repeated in the future. Further, Merritt admits that he is no longer at the institution where Defendants work. The mere possibility that Merritt may once again be housed at an institution where one or more of the Defendants is employed is too remote to be labeled a controversy. Therefore, a declaration that Defendants' past conduct violated Merritt's constitutional rights "would [be] nothing more than a gratuitous comment without any force or effect." N. Va. Women's Med. Ctr. v. Balch, 617 F.2d 1045, 1049 (4th Cir.1980). Accordingly, Plaintiff's claim for declaratory judgment relief is subject to dismissal for failing to satisfy the "actual controversy" prerequisite of 28 U.S.C. § 2201. *See* Tucker v. Phyfer, 819 F.2d 1030, 1035 & n.5 (11th Cir. 1987) (district court was required to dismiss plaintiff's claim for declaratory and injunctive relief for lack of standing, plaintiff's "live" claim for money damages notwithstanding, because a declaration that the defendants' past conduct violated his constitutional rights "would be nothing more than a gratuitous comment without any force or effect") (citing Emory, 756 F.2d at 1552); *see also, e.g.*, Gordon v. Colin, 267 F. App'x 843, 845 (11th Cir. 2008) (unpublished) (affirming district court's dismissal of civil rights plaintiff's claim for prospective declaratory relief against judge, because the possibility that the judge would issue a future writ of bodily attachment was too speculative to

satisfy the case and controversy requirements of Article III); Holt v. Crist, 233 F. App'x 900, 903–04 (11th Cir. 2007) (unpublished) (civil rights plaintiff's claims against judge, prosecutors, and public defender arising from state criminal prosecution brought against him did not warrant declaratory relief, notwithstanding his claim that he would possibly be subject to criminal prosecution in the future; all of plaintiff's factual allegations related to past conduct, and he made no allegation of a continuing injury) (citing Emory, 756 F.2d at 1552; Malowney v. Fed. Collection Deposit Group, 193 F.3d 1342, 1348 (11th Cir. 1999); Siegel v. LePore, 234 F.3d 1163, 1176–77 (11th Cir. 2000)).

Additionally, a claim for declaratory relief is considered to be an official capacity claim against the relevant state entity, *see* Edwards v. Wallace Cmty. College, 49 F.3d 1517, 1524 n.9 (11th Cir. 1995), and, implicitly, not an individual capacity claim. As previously discussed, Merritt has not alleged an official capacity claim. Therefore, Defendants' motion to dismiss his claim for injunctive and declaratory relief should be granted. *See, e.g.*, Hall v. Jarvis, No. 3:10-cv-442-J-99MMH-TEM, 2011 WL 971125, at *6 (M.D. Fla. Mar. 2, 2011) (unpublished) (granting defendant's motion to dismiss insofar as it sought dismissal of plaintiff's claim for declaratory relief against him in his individual capacity).

Accordingly, it **ORDERED**:

The clerk of court shall modify the docket to reflect that Defendant Godfrey's name is correctly spelled Godfrey instead of Godfree.

And it is respectfully **RECOMMENDED:**

That Defendants' motion to dismiss (doc. 56) be **GRANTED IN PART** as follows:

1. That the motion be **GRANTED** as to Plaintiff's Eighth Amendment claim against Defendants Godfrey and Rogers regarding use of a Special Management Spit Shield on June 18, 2012, pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii), and that Defendant Godfrey be **DISMISSED** from this action;

2. That the motion be **GRANTED** as to Plaintiff's requests for injunctive and declaratory relief;

3. That the motion be otherwise **DENIED**.

At Pensacola, Florida this 10<u>th</u> day of August 2015.

/s/ *Elizabeth M. Timothy*
**ELIZABETH M. TIMOTHY**
**CHIEF UNITED STATES MAGISTRATE JUDGE**

**NOTICE TO THE PARTIES**

**Objections to these proposed findings and recommendations must be filed within fourteen (14) days after being served a copy thereof.  Any different deadline that may appear on the electronic docket is for the court's internal use only, and does not control.  A copy of objections shall be served upon all other parties.  If a party fails to object to the magistrate judge's findings or recommendations as to any particular claim or issue contained in a report and recommendation, that party waives the right to challenge on appeal the district court's order based on the unobjected-to factual and legal conclusions.**  *See* **11th Cir. Rule 3-1; 28 U.S.C. § 636.**